IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03CV357-MU-02


WILLIAM DERIS BELL,           )
    Petitioner,           )
                     )
      v.                    )               ORDER
                     )
RICK JACKSON, (former         )
  Superintendent of the      )
  Brown Creek Correc-        )
  tional Institution,        )
      Respondent.            )
_____)


    **THIS MATTER** comes before the Court on petitioner's Petition

for a Writ of <u>Habeas Corpus</u> under 28 U.S.C. §2254 (doc. # 1),

filed July 14, 2003; on the respondents' "Motion For Summary

Judgment and Answer . . . " (doc. # 5), filed September 26, 2003;

on the petitioner's "Motion To Stay Summary Judgment" (doc. # 8),

filed November 19, 2003; on the petitioner's "Response To State's

Request For Summary Judgment . . . " (doc. # 9), filed November

19, 2003; on the respondent's "Motion To Strike" (doc. # 10),

filed December 10, 2003; and on the petitioner's "Request For

Leave Of The Court To Respond" (doc. # 11), filed December 19,

2003.

    For the reasons stated herein, and for the further reasons

stated in the respondent's Supporting Brief, the petitioner's Motion to Stay Summary Judgment will be <u>denied</u>; the respondent's Motion To Strike will be <u>dismissed</u> as moot; the petitioner's Request for Leave will be <u>dismissed</u> as moot; the respondent's Motion for Summary Judgment will be <u>granted</u>; and the petitioner's <u>Habeas</u> Petition will be <u>denied</u> and <u>dismissed</u>.

## I.  **FACTUAL AND PROCEDURAL BACKGROUND**

According to the record of this matter, on November 2, 1998, two Indictments were filed in the Superior Court of Gaston County, charging the petitioner with Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Injury and Malicious Assault in a Secret Manner.  After entering pleas of "not guilty," the petitioner requested a jury trial.  However, prior to the time that the petitioner's trial was commenced, the Malicious Assault charge was dismissed by the State.

On May 28, 2001, the petitioner's trial got underway.  The facts of the case, primarily as recounted in the North Carolina Court of Appeals' opinion, are that the State presented evidence from the victim and four other witnesses during its case-in-chief.  Such evidence tended to show that prior to August 28, 1998, Chad Burgess, the petitioner's nephew, and the victim had fought on at least one occasion; and that the victim previously had filed complaints with the local police, alleging that Burgess had driven by and fired shots into his home on one or more

occasions.  On the evening of August 28, 1998, the petitioner
went out riding around Gaston County with another friend, Gary
Butler, on the back of Chad Burgess's pick-up truck.  During that
outing, the three drove past the victim's home.

The State's presentation further showed that on the evening
in question, while Burgess and the others were passing the vic-
tim's home, the victim ran outside to confront Burgess.  As the
victim ran toward the truck, Burgess stopped and the petitioner
stood in the back of the truck and fired three or more shots at
the victim from his .380 caliber pistol.  One of the shots struck
the victim's right arm, severed a nerve and then lodged in the
victim's rib cage.  As the victim turned to run away, a second
shot struck him in the upper part of his right leg, shattering
his hip and thigh bones.  The victim testified that although he
already had fallen down an embankment, additional shots were
fired at him until his younger brother ran from their home, and
fired a shotgun blast into the air.  At that point, Burgess sped
away from the scene.  See North Carolina v. Bell, No. 01-1170,
slip op. at 1-2 (N.C.App. May 21, 2002).

The State's evidence also showed that an investigator spoke
with the victim after he arrived at a local hospital for treat-
ment of his gunshot wounds.  During that conversation, the victim
specifically told the officer that the petitioner had shot him.
The State's evidence further showed that the investigator who

spoke with the petitioner decided not to perform a gunshot residue test ("GSR" hereafter) on the victim once he observed that the victim's hands were "covered in blood. . . ."

Furthermore, the State presented evidence which established that about three days after the shooting, the petitioner was interviewed about this incident. During his interview, the petitioner admitted, inter alia, that on the evening of the shooting, he, Burgess and Butler had been driving past the petitioner's home; that on one of their passes, he and Burgess thought that they had heard the victim call out to Burgess; that Burgess then proceeded toward the victim's home; that the petitioner believed that Burgess and the victim simply were going to have a fist-fight; that once Burgess' truck neared the victim, the petitioner saw a flash of gunfire in the area of some trees; and that the petitioner then fell onto the floor of the truck's bed and fired three shots in the direction from where he believed the first shots had been fired. Notably, however, the petitioner did not report that he actually saw the victim fire any shots.

For the defense's part, the petitioner presented the testimony of Gary Butler. Mr. Butler testified that on the night in question, he, Burgess and the petitioner simply were riding around Gaston County with no particular destination. Unlike the petitioner's statement, Butler claimed that during their joyride, he and the others encountered the victim as he ran toward

their truck with a pistol in his hand.  According to Butler, the victim fired his gun into the back of Burgess' truck, at which point the petitioner reportedly stood up, "drawed [sic] a bead upon [the victim] . . . " and began firing at him.  Mr. Butler also told the jury that he saw the victim fall down as he and the others sped away from the scene.

At the close of all of the evidence, counsel for the parties discussed proposed jury instructions with the Court.  However, following the time that the trial Court gave its instructions to the jury, the defense attorney asked the Court to add an instruction for the lesser included offense of Assault with a Deadly Weapon Inflicting Serious Injury.  Upon considering that request, the trial Court concluded that the jury already had been charged on the theory of self-defense/defense of others, and that a self-defense theory necessarily precluded the petitioner's ability to argue for the lesser included Assault offense.   Therefore, the trial Court denied defense counsel's request for the additional instruction.

After deliberating, the jury convicted the petitioner of the sole charge for which he was tried.  The Court next proceeded to a Sentencing Hearing in this matter.

During that proceeding, the Court found that the petitioner had been convicted of a Class C Felony; that due to his criminal history, he was at Prior Record Level III; and that the peti-

tioner's <u>minimum</u> sentencing range was a term of 93 to 116 months, with a corresponding maximum term of 139 months. At the conclusion of the Hearing, the Court sentenced the petitioner to a term of 108 to 139 months imprisonment.

The petitioner directly appealed his case to the North Carolina Court of Appeals, arguing that the trial Court had plainly erred in refusing to charge the jury on the lesser offense of Assault with a Deadly Weapon Inflicting Serious Injury; and that trial counsel had been ineffective for having failed to request that instruction in a timely manner. <u>Bell</u>, No. COA01-1170, at 1. However, the State appellate Court found that in light of the "uncontradicted evidence"--including the petitioner's own admission that he had aimed his .380 caliber semi-automatic pistol at the victim and fired multiple shots--it was improbable that the subject instruction would have yielded a different result. <u>Id</u>. at 1-2. Accordingly, the appellate Court found "no error," and affirmed the petitioner's conviction and sentence. <u>Id</u>. at 2.

On July 10, 2002, the petitioner returned to the Superior Court of Gaston County with his Motion for Appropriate Relief ("MAR" hereafter). By his MAR, the petitioner argued, for the first time, that his due process rights were violated when the prosecutor knowingly used perjured testimony from the victim, and when he withheld exculpatory evidence from the defense. The petitioner also claimed, for the first time, that his due process

rights were violated when the trial Court used three uncounseled misdemeanor convictions to calculate his sentence.  Last, the petitioner alleged that his trial "and/or" appellate attorneys were ineffective; however, he only presented arguments against trial counsel.  That is, the petitioner argued that trial counsel was ineffective because he had failed: (a) to investigate a potential witness; (b) to investigate his criminal history for sentencing purposes; (c) to accept a continuance which was offered by the trial Court due to counsel's illness; and (d) to timely seek an instruction for the lesser included Assault offense.

However, the MAR Court found that the petitioner had failed to set forth any "probable grounds for the relief requested, either in law or fact."  Consequently, the MAR Court denied the petitioner's Motion.

Thereafter, the petitioner filed a Petition for a Writ of Certiorari in the State Supreme Court.  Pertinent to this Petition, the petitioner argued that trial counsel had been ineffective for failing to call a particular witness; and that the trial Court had erred in including certain unidentified convictions in its sentencing calculations.  Nevertheless, on July 10, 2003, the petitioner's Petition for A Writ of Certiorari was denied, thereby concluding his pursuit of State court review.

Accordingly, on July 14, 2003, the petitioner came to this Court on the instant federal <u>Habeas</u> Petition.  By his Petition,

7

the petitioner argues that his due process rights were violated by the prosecutor's use of perjured testimony from the victim and by his withholding of exculpatory evidence. In addition, the petitioner argues that his due process rights also were violated when the trial Court used three prior uncounseled misdemeanor convictions to calculate his sentence; that his sentence other-wise violates the Due Process Clause; and that he was subjected to several instances of ineffective assistance of counsel.

On September 26, 2003, the respondent filed a combined Mo-tion for Summary Judgment and Answer to Petition. By that document, the respondent contends that the petitioner's claim of withheld evidence is conclusory and otherwise lacking in merit. The respondent further argues that because the petitioner failed to identify or provide an affidavit from the witness who sup-posedly would have established that the victim had perjured him-self, he cannot prevail on his attack against the prosecutor. As for the petitioner's claim that his sentence violates the Due Process Clause, the respondent argues that such claim must be flatly rejected because the petitioner's own documentary submis-sions fail to show an erroneous sentence. Last, the respondent argues that the petitioner has failed to show either a deficiency or prejudice in connection with his challenge to his attorneys' performances.

Next, on November 19, 2003, the petitioner filed a document

captioned as "Motion To Stay Summary Judgment To Depose A Witness Whose Affidavit Testimony Is Currently Unavailable."  By that document, the petitioner asks the Court to grant him leave to depose Amber Price, the person whom he now claims will be able to establish that the victim committed perjury.  However, as the respondent correctly noted in his Motion to Strike this Motion to Stay, the petitioner has failed to establish good cause to allow him to engage in the limited discovery procedures which are available in this <u>habeas</u> context.  Therefore, the petitioner's Motion to Stay will be denied.

Also on November 19, 2003, the petitioner filed his Response to the respondent's Motion for Summary Judgment.  In that Response, the petitioner argues a number of matters, including that the MAR Court's decision is not entitled to any deference since the presiding Judge was not the trial Judge and, therefore, did not have "actual knowledge" of the pertinent facts in order to render a correct decision.  The petitioner also contends that the fact that Amber Price was subpoenaed by the prosecutor but not called as a witness establishes the State's knowledge that the victim committed perjury.  The petitioner also points out that the respondent failed to respond to his claim against appellate counsel.

In addition, the petitioner's Response contains several Affidavits.  One such Affidavit is from Erica Bell, who identifies

Amber Price as the person who could establish that the victim had committed perjury. The petitioner also submitted his own Affidavit stating that he was the only person in Burgess' vehicle who was armed on the night of the assault; and that he only shot the victim in order to defend himself and his companions.

For its own part, the Court has reviewed the entire record of this matter along with the relevant legal precedent, and determined that the petitioner has failed to demonstrate an entitlement to relief on any of his claims.[1] More particularly, the petitioner has failed to establish that the State court's adjudication of his claims is contrary to or involved an unreasonable application of clearly established law, or that such decision was predicated upon an unreasonable determination of the facts. Therefore, the instant Petition must be <u>denied</u> and <u>dismissed</u>.

## II. **ANALYSIS**

### A. **Standard of review for habeas petitions**.

---

[1]Interestingly, the undersigned has determined that the petitioner has procedurally defaulted his claims that: the prosecutor violated his due process rights; his sentence violates the due process clause; and his attorneys were ineffective for trial counsel's failure to have investigated his prior record, trial counsel's failure to have accepted the Court's offer of a continuance, and for appellate counsel's decision to raise an ineffective assistance of counsel claim on direct appeal and for having gotten disbarred while representing him. That is, the record reflects that these claims were not raised either in the petitioner's direct appeal or in his Certiorari Petition. However, because the State has not raised procedural default as an affirmative defense to such claims, this Order will address the subject claims on their merits. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 165-66 (1996) (State's failure to raise procedural default defense constitutes a waiver permitting review of claim).

Generally speaking, the standard of review to be applied by the Court to <u>habeas</u> cases is "quite deferential to the rulings of the state court." <u>Burch v. Corcoran</u>, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the <u>Burch</u> Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. §2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . ."

<u>Id</u>. (internal citations omitted).

The Supreme Court has explained that a State court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000), quoted in <u>Burch</u>. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may <u>not</u> issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal prin-

ciples.  <u>Id</u>.

The applicable standard of review is to be applied to "all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree."  <u>Thomas v. Davis</u>, 192 F.23d 445, 455 (4th Cir. 1999).

> **B.  The petitioner's claim that the prosecutor violated his due process rights is legally baseless**.

Turning to his first claim, the petitioner argues that his due process rights were violated when the prosecutor knowingly used perjured testimony against him, and when the prosecutor suppressed evidence which would have established that the victim lied about being unarmed.  In support of this claim the petitioner asserts that the prosecution chose not to obtain a GSR test on the victim in order to conceal exculpatory evidence, <u>i.e.</u>, that the victim also had fired a weapon during the assault.  The petitioner also asserts that the prosecutor subpoenaed, but did not call Amber Price as a witness during the trial in order to hide the victim's perjury.  The respondent contends that the foregoing arguments are conclusory, and do not entitle the petitioner to any relief.

In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the U.S. Supreme Court held that suppression by the prosecution of evidence favorable to an accused upon request violates due process if, and

only if, such evidence is material either to guilt or punishment. See also United States v. Bagley, 473 U.S. 667 (1985) (noting that to prevail on claim of reversible discovery error, defendant must allege facts which show a reasonable probability that result of proceeding would have been different had evidence been disclosed to defense).

Here, the petitioner's claim that the prosecutor violated his constitutional rights by failing to conduct a GSR test is feckless. That is, it goes without saying that there simply is no constitutional right to the administration of a GSR test. Moreover, the State's evidence that the test was not administered because the victim's hands were covered in his blood tends to credibly explain that the decision not to administer the test had nothing to do with an attempt to hide or otherwise suppress any evidence.

Likewise, with regard to the petitioner's argument concerning Amber Price, the Court first notes that the petitioner did not argue this precise claim on appeal or on collateral review in State court; nor did he specifically mention Amber Price during those proceedings. In any event, the petitioner still has failed to establish that the State chose not to call Price as a witness in order to conceal any supposedly untruthful testimony.

Indeed, the petitioner has not conclusively demonstrated that Ms. Price actually would have contradicted the victim's

testimony.  Rather, the petitioner has done no more than to rely upon innuendo and hearsay in two affidavits from a family member in support of his claim that Price's testimony would have undermined the victim's testimony.  It goes without saying, however, that such hearsay falls far short of carrying the day for the petitioner on this issue.  Thus, in the absence of any tangible proof that Ms. Price can support the petitioner's claim that the victim perjured himself, let alone that the State suborned that perjury, the petitioner cannot possibly obtain any relief on this claim.

      C.  **The petitioner also has failed to show that he is entitled to any relief on his claims against his former attorneys**.

By his second claim, the petitioner alleges that he was subjected to ineffective assistance of by trial and appellate counsel in several distinct respects.  In particular, the petitioner asserts that trial counsel was ineffective for having failed to: (1) investigate Daniel Williams as a potential witness; (2) investigate the petitioner's criminal history; (3) accept the continuance which was offered by the trial judge; and (4) timely seek an instruction for the lesser included offense of Assault With a Deadly Weapon Inflicting Serious Injury.  Further, the petitioner argues that appellate counsel was ineffective because she raised a claim which rarely is successful on direct appeal and because she lost her license to practice law during

the same period that his appeal was pending.  In response, the respondent argues that the foregoing allegations are both factually and legally baseless.

With respect to allegations of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby.  Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen'l. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

To demonstrate prejudice, the petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986), citing United States v. Frady, 456 U.S. 152, 170 (1982). Under these circumstances, then, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31.  Therefore, if the peti-

tioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

### 1. <u>Daniel Williams as a potential witness</u>

Concerning Daniel Williams, the petitioner argues that had trial counsel talked with Williams as he asked him to do, counsel would have learned that the victim's brother told Williams that the victim had fired a weapon during the course of his assault; and counsel would have been able to call Williams as a witness to testify to that statement. According to the petitioner, then, counsel's failure to talk with Williams precluded counsel from using Williams to refute the victim's testimony or to establish his own self-defense theory.

The problem with the petitioner's reasoning, however, is that Williams does not assert that <u>the victim</u> ever told him that he had a weapon. Nor did the victim's brother ever take the stand and deny that the victim was armed. Therefore, there simply was no testimony that Williams could have refuted or established.

To put it another way, Williams' potential testimony would have been relevant and admissible only if <u>the victim</u> had told Williams that he had been armed during the assault, or if the victim's brother had taken the stand and denied that the victim was armed at that time. However, since neither of those eventu-

alities occurred, had counsel attempted to call Williams' as a witness, his testimony likely would have been excluded as inadmissible hearsay. Therefore, even if counsel was deficient for failing to interview Williams, the facts of this case dictate a conclusion that counsel's deficiency did not result in prejudice.

### 2.  The Court's offer of a continuance

Likewise, the petitioner also has failed to show any prejudice in connection with his assertion that counsel was ineffective for having rejected the trial judge's offer to continue the trial for a few days in order to allow counsel to recover from what was later diagnosed as "walking pneumonia." Indeed, the petitioner does not point to a single action that trial counsel failed to take as a direct result of his illness, and he does not identify anything erroneous which counsel did as a result of his condition.

Rather, the petitioner seeks to meet his burden of proving prejudice solely on the basis of his speculation that the Court and the prosecutor's willingness to continue the trial somehow reflected their "recogni[tion of] a potential due process violation . . . ," and on the basis of his speculation that the "prejudicial effect of a 'distraction' such as this is obvious." Clearly, however, these unsupported contentions do not come close to establishing that the petitioner actually was harmed by counsel's decision in this regard.

### 3. __The jury instruction request__

Similarly, the petitioner is mistaken in his assertion that counsel was ineffective because he failed to ask the Court before the jury began deliberating for an instruction on the lesser included offense of Assault with a Deadly Weapon Inflicting Serious Injury.  As was previously noted, the appellate Court found that the uncontradicted evidence that the petitioner had fired multiple shots at the victim from a .380 semiautomatic pistol, particularly in the absence of any evidence that the petitioner had <u>not</u> intended to kill the victim, makes it improbable that "a different result would have occurred . . . " had the instruction been given.  <u>Bell</u>, No. COA01-1170, slip op. at 3.  Inasmuch as the petitioner has not set forth any argument to withstand this conclusion, he cannot demonstrate that he was prejudiced by counsel's delay in requesting the subject instruction.

### 4. __The performance of appellate counsel__

Almost as an aside, the petitioner also argues that appellate counsel was deficient.  In support of that claim, the petitioner again seeks primarily to rely upon abject speculation and inferences to show that he suffered prejudice.  That is, the petitioner claims that he was prejudiced when appellate counsel raised an issue--that trial counsel was ineffective for failing to timely seek a jury instruction for the lesser included assault offense--which the appellate Court rejected out-of-hand.  The

petitioner also claims that he was prejudiced when appellate counsel was disbarred during the time that his case was pending on appeal.

However, this Court is aware that claims of ineffective assistance of counsel often are raised on direct appeal; and that appellate Courts are not constrained from granting relief on such claims when, as the appellate Court explained in the petitioner's case, such ineffectiveness is plainly evident on the record. Therefore, the petitioner was not prejudiced by appellate counsel's decision to raise this claim.

Moreover, the petitioner has not pointed to any issue that appellate counsel could have raised but for her having been disbarred after she submitted her appellate brief in this matter. Therefore, the petitioner's speculation about appellate counsel is woefully inadequate to establish prejudice.

### 5. **The Court's sentencing calculations**

As to his final allegation of ineffective assistance, the petitioner claims that trial counsel was deficient for failing to investigate his criminal history for sentencing purposes. Although this claim, at first blush, appears to have some appeal, the Court has determined that the petitioner cannot prevail.

According to the petitioner, counsel stipulated to the inclusion of the convictions which the trial Court used to calculate his sentence without having investigated those matters. As

a result, the petitioner claims that the trial Court erroneously
included in its calculations three of his prior convictions for
which he had no attorney and had not waived his right to counsel.
Therefore, the petitioner contends that he was sentenced at a
higher Prior Record Level than should have been applied.  In
response, the respondent argues that the petitioner has failed to
show that an investigation would have resulted in a determination
that a different Prior Record Level applied; and that the peti-
tioner ultimately has failed to present any credible evidence
that the Court's calculations were wrong.

The record of this matter shows that the trial Court found
that the petitioner had six prior convictions which could be con-
sidered for sentencing purposes, assessing one criminal history
point for each of them.  Next, the Court assessed an additional
point because the petitioner committed the instant offense while
he was on probation in another case.  As a result, the Court
found that the petitioner had a total of seven criminal history
points, which placed him at Prior Record Level III (corresponding
to 5 to 8 criminal history points).

The petitioner does not challenge the trial Court's inclu-
sion of all of those points.  Indeed, the petitioner concedes
that the points assessed for three of the six convictions and for
his having committed the offense while on probation all were
proper.  However, the petitioner argues that the trial Court

should not have assessed one point each for his convictions for a DWI (case number 89CRS3623) and Escape from Prison (case number 89CRS20480) because those convictions were illegal under <u>Baldasar v. Illinois</u>, 446 U.S. 222 (1980) (holding that prior uncounseled misdemeanor convictions cannot be used under an enhanced penalty statute to convert subsequent misdemeanor conviction into a felony).[2]

In addition, although the petitioner concedes that the third supposedly uncounseled conviction which was used by the Court(for DWI in case number 84CR19489) was not precluded by <u>Baldasar</u> because he did not receive an active term of imprisonment in that case, he believes that the conviction still should not have been included in his sentencing calculations by virtue of the U.S. Supreme Court's ruling in <u>Alabama v. Shelton</u>, 535 U.S. 654 (2002) (holding that prior uncounseled convictions cannot be used for subsequent enhancement purposes notwithstanding whether or not an active term of imprisonment was imposed for the earlier case).

While the Court finds that the petitioner is correct that the vastly fragmented <u>per curiam</u> decision in the <u>Baldasar</u> case

---

[2] <u>Nichols v. United States</u>, 511 U.S. 738, 747-49 (1994), the Supreme Court overruled <u>Baldasar</u>, concluding that an uncounseled conviction in which no term of imprisonment actually was imposed "may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment." In fact, the <u>Nichols</u> Court reasoned that enhancement statutes do not change the penalty imposed for the earlier conviction; therefore, the enhancements are acceptable. <u>Id</u>. at 747. However, since the <u>Baldasar</u> holding is inapplicable here, the fact that it was overruled is inconsequential.

precluded courts from using prior uncounseled misdemeanor con-
victions to convert subsequent misdemeanor convictions into
felonies by way of the imposition of enhanced sentences, that
case is inapplicable here.  That is, the Assault offense for
which the petitioner here was convicted is, by its definition, a
felony offense; therefore, he already was facing sentencing as a
felon, without consideration of his prior record.  Simply put,
the rule announced in <u>Baldasar</u> was not violated because the trial
Court did <u>not</u> use the petitioner's prior convictions to transform
this Assault conviction from a misdemeanor into a felony.

Equally critically, this Court's review of the record does
<u>not</u> conclusively establish that the petitioner actually was un-
counseled or that he had not validly waived his right to counsel
in connection with the three offenses which are at issue.  To be
sure, the only certified document which the petitioner has sub-
mitted in support of his assertion that the convictions were
uncounseled, is a certified copy of his "Criminal Record Check"
(hereafter "CRC").  That CRC consists of 10 pages of computer
printout, evidencing all of the charges and convictions which the
State of North Carolina had on file for the petitioner between
1983 and August 27, 2002.

According to the printout, the petitioner has sustained more
than eight convictions for such offenses as Assault on a Female
(87CR2756); Driving While License Revoked (87CR2694, 89CR-45654,

and 90CR2446); Driving While Intoxicated (87CR2694, 90CR-8398, and 96CR34932); Escape from State Prison (89CR20480); and Failure to Heed Light or Siren (87 CR2696). The subject printout also lists the instant Assault conviction for which the petitioner now is imprisoned.

Ironically, however, this certified document is silent as to whether or not the petitioner was represented by counsel in connection with any of those prior convictions. In fact, while it is clear from the trial documents that the petitioner was represented by J. Thomas Hunn at his trial of the instant Assault conviction, the printout which he submitted does not list Hunn or anyone else as counsel in the case. Rather, the only attorneys identified in the subject printout are the Assistant District Attorneys who took dismissals in several additional cases in which the petitioner was charged but not convicted. Therefore, this CRC cannot be relied upon to support a conclusion that the petitioner was not represented by counsel for the subject three offenses.

Furthermore, despite the fact that the petitioner submitted at least six Affidavits, including three of his own, not one of those affidavits addresses the issue of whether he actually waived his right to counsel for the convictions in question. Such glaring omission has not gone unnoticed by this Court.

Moreover, while the petitioner has submitted certain uncer-

tified documents, including a "Waiver of Counsel" form which evidences that he waived his right to counsel for one of the DWI cases which he does not challenge, that document is of question-able value here. That is, the petitioner's presentation of the subject signed Waiver form does not support a conclusion that his failure to submit additional signed Waiver forms for the three cases at issue proves that he did not waive his right to counsel for those matters.

To put it another way, the inclusion of that Waiver form does not require this Court to give the petitioner the benefit of any favorable inferences which may be drawn from the omission of additional waiver forms. Ultimately, therefore, on this record the petitioner cannot establish that he was prejudiced by coun-sel's decision not to challenge these three convictions.

### D. **The petitioner's due process rights were not violated**.

By his final claim, the petitioner more-or-less rehashes his previous allegation concerning the calculation of his sentence, under the guise of raising a separate due process claim. How-ever, it is abundantly clear, for the same reasoning by which the underlying sentencing challenge was defeated, that this allega-tion does not raise "a claim of constitutional magnitude . . . ." Paine v. Baker, 595 F.2d 197, 201 (4th Cir.), cert. denied, 444 U.S. 925 (1979) (observing that most sentencing claims do not rise to the level of stating a constitutional claim for relief).

### III. CONCLUSION

In sum, this Court has determined that the petitioner has failed to demonstrate that the State court's adjudication of his claims was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court. Therefore, the respondent's Motion for Summary Judgment must be <u>granted</u>; and the petitioner's Petition must be <u>denied</u> and <u>dismissed</u>.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the petitioner's Motion to Stay Summary Judgment is **DENIED;**

Strike is **DENIED;**

2. That the respondent's Motion to Strike the Petitioner's Motion to Stay Summary Judgment is **DISMISSED as moot;**

3. That the petitioner's Request for Leave is **DENIED;**

4. That the respondent's Motion for Summary Judgment is **GRANTED;** and

4. That the petitioner's Petition for a Writ of Habeas Corpus is **DENIED** and **DISMISSED**

   **SO ORDERED.**

Signed: September 14, 2006

Graham C. Mullen
United States District Judge